UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
SUZANNE V. FERRY,

      Debtor.
_____/

E-Z CASHING, LLC,

    Appellant/Cross-Appellee,
                        Case No. 8:20-cv-1179-VMC
v.                             Bankr. No. 8:11-bk-1854-RCT

SUZANNE V. FERRY,

    Appellee/Cross-Appellant.
_____/

**ORDER**

In the context of an adversary proceeding commenced in a Chapter 11 bankruptcy case, Appellant/Cross-Appellee E-Z Cashing, LLC appeals the Bankruptcy Court's May 7, 2020, decision granting Appellee/Cross-Appellant Suzanne Ferry's motion for summary judgment and denying E-Z Cashing's cross-motion for summary judgment. E-Z Cashing filed a brief in support of its appeal on February 8, 2022. (Doc. # 47). On April 5, 2022, Ms. Ferry filed a response to E-Z Cashing's appeal. (Doc. # 52). She also cross-appeals the Bankruptcy Court's May 7, 2020, decision denying her motion for attorney's fees and costs. (Id.). Both parties filed response

1

and reply briefs. (Doc. ## 58, 60). As discussed below, the Court affirms in part and reverses in part the decision of the Bankruptcy Court as to its order on the cross-motions for summary judgment. The Court dismisses as moot Ms. Ferry's cross-appeal regarding her motion for attorney's fees.

I.   **Background**

    A.   **Adversary Proceeding before the Bankruptcy Court**

        1.   **550 Corey Loan**

Ms. Ferry signed a promissory note and mortgage in favor of Allied Mortgage & Financial Corp. dated May 26, 2004, in the principal amount of $550,000 (the "Loan"). (Doc. # 8-8 at 13). The Loan was secured by 550 Corey Avenue, St. Pete Beach, Florida ("550 Corey"). (Doc. # 8-14 at 2). Bayview Loan Servicing, LLC acquired the Loan by assignment in September 2007. (Doc. # 8-14 at 2).

The 550 Corey Loan contains three clauses relevant to the case at bar. First, Section 5.12 establishes that interest would accrue upon default at the "maximum rate permissible under Florida law." (Doc. # 8-100 at 17). Second, Section 4.03(a) provides that "no delay by the Mortgagee in exercising any such remedy shall operate as a waiver thereof or preclude the exercise thereof during the continuance of that or any subsequent default." (Id. at 14). Third, Section 1.08(a)

2

provides that the mortgagee is entitled to reasonable attorney's fees and expenses if "the Mortgagee commences an action against the Mortgagor . . . for the recovery of any sum secured hereby[.]" (Id. at 4). Section 1.08(a) also provides:

> Notwithstanding the existence of Florida Statute 57.105(2) or any statute of a like or similar nature, the Mortgagor hereby waives any right to any attorneys' fees thereunder and the Mortgagor agrees that the Mortgagee exclusively shall be entitled to indemnification and recovery of any and all attorneys' fees arising out of or related to this Mortgage and/or any agreement contemplated to be executed in conjunction herewith.

(Id.).

## 2.   **Bankruptcy Proceeding**

Ms. Ferry filed for protection under Chapter 11 of the Bankruptcy Code on February 1, 2011. (Doc. # 8-8). She listed 550 Corey on Schedule A, and Bayview's Loan is item number 4 on Schedule D. (Id. at 13, 22). Bayview filed Proof of Claim 14-1 in the amount of $941,887.77. (Doc. # 8-113). In its claim, Bayview stated that the loan balance as of Petition Date was $941,887.77, of which $282,806.26 represented accrued interest at a default rate of 18 percent. (Id. at 3). The proof of claim stated that "[i]nterest continues to accrue at the default rate of interest, post petition." (Id.).

3

On June 29, 2012, the Bankruptcy Court entered an order confirming Ms. Ferry's Fourth Amended Plan of Reorganization (the "Plan"). (Doc. # 8-20). The Plan reduced the secure portion of the 550 Corey Loan from $941,887.77 to $680,000 and required Ms. Ferry to make monthly payments of $4,880.77. (Doc. # 8-18 at 4).

On October 5, 2018, Bayview filed a motion to dismiss, or alternatively, for relief from the automatic stay with respect to three of Ms. Ferry's properties, including 550 Corey (the "Motion for Stay Relief"). (Doc. # 8-21). As to 550 Corey, Bayview alleged that Ms. Ferry failed to comply with her payment obligations under the Plan. (Id.).

On November 8, 2018, the Court entered an order granting, in part, Bayview's Motion for Stay Relief (the "Stay Relief Order"). (Doc. # 8-27). The Stay Relief Order provided in relevant part:

2.      The Debtor and Creditor, Bayview Loan Servicing, LLC (collectively the "Parties") have agreed that the Debtor owes Creditor the following sums on the three (3) mortgage loans (collectively the "Loans"):[1]

| | |
|---|---|
| Mortgage loan encumbering 600 Corey Ave. (XXX4040) | $895,078.56 |
| Mortgage loan encumbering 550 Corey Ave. (XXX6402) | $1,177,838.42 |
| Mortgage loan encumbering 1130 Pinellas Bayview S (XXX2461) | $1,1130,665.79 |

3.      The Parties have agreed to treat the Loans as follows:

| | |
|---|---|
| Mortgage loan encumbering 600 Corey Ave. (XXX4040) | $3,445.25/mos. |
| Mortgage loan encumbering 550 Corey Ave. (XXX6402) | $4,880.77/mos. |
| Mortgage loan encumbering 1130 Pinellas Bayview S (XXX2461) | $4,665.44/mos. |

4.      In addition to the above referenced monthly Loan payments, the Parties have agreed that the Debtor shall pay the Creditor the sum of $10,000.00 per month to account for the arrears owed on each Loan as a result of Debtor's default under the confirmed plan.

5.      All three Loans shall mature in 13 months, with the total indebtedness owed to Creditor being paid by the Debtor on the 13th month following entry of this Order.

6.      Should the Debtor default; Creditor may file a Notice of Default, and if the Debtor does not cure such default within 72 hours, Creditor may submit an order granting relief from the automatic stay without necessity of a hearing.

---

[1]  The Parties are continuing their negotiation as to the full indebtedness owed on the Loans. In the event the full indebtedness owed under the Loans is re-calculated, the Parties will submit a revised order. Notwithstanding this, the Debtor shall pay the Creditor based on the payment terms set forth in paragraphs 3, 4 and 5 of this Order, with the Loans maturing in month 13 following entry of this Order.

---

(Id. at 2). The Bankruptcy Court never entered a revised Stay Relief Order.

Sometime around September 17, 2019, Ms. Ferry requested an estoppel letter from Bayview for 550 Corey pursuant to Fla. Stat. § 701.04(1). (Doc. # 8-84 at 1). In response, Bayview sent Ms. Ferry an estoppel letter dated September 25, 2019, showing a total payoff amount of $965,242.52 as of October 31, 2019, itemized as follows:

```
The current Unpaid Principal Balance is:   $645,370.33
Interest through 10/31/2019                $211,074.18
Statement Fees                             $100.00
Late Charges/NSF Fees                      $1,636.04
Recoverable Fees                           $0.00
Prepayment Consideration                   N/A
Lockout                                    $0.00
Release Fees                               $250.00
Legal Fees                                 $0.00
Default Interest                           $0.00
Corporate Advances                         $444.00
Other funds owed by Borrower               $93,907.20
Loss Draft Balance                         $0.00
Unapplied funds owed to Borrower           $0.00
Escrow Shortage and Property Inspection    $12,460.77
Notice Fee Amount                          $0.00
**TOTAL AMOUNT DUE TO PAYOFF LOAN IN FULL** $965,242.52

Interest will accrue at $125.49 per day from 11/1/2019 to the
date sufficient funds are received in this office.
```

(Doc. # 8-65 at 2) (emphasis added) (the "Estoppel Letter").

The second page of the Estoppel Letter contained the following

paragraphs:

A. YOU MUST CALL THE NUMBER LISTED BELOW TO UPDATE
   FIGURES PRIOR TO REMITTING FUNDS, AS FIGURES ARE
   SUBJECT TO CHANGE WITHOUT NOTICE.

B. Note holder reserves the right to adjust these
   figures and refuse any funds which are
   insufficient to pay the loans in full or for any
   reason, including but not limited to error in
   calculation of payoff amount, previously
   dishonored check or money order, or additional
   disbursements made by this note holder between
   the date of this payoff statement and receipt of
   funds.

(Id. at 3). The Estoppel Letter was valid through October 31,

2019. (Id. at 2).

6

Ms. Ferry entered into a contract to sell 550 Corey for $1.5 million on November 19, 2019. (Doc. # 8-86 at 2). On December 20, 2019, Ms. Ferry filed a motion seeking leave to sell 550 Corey for $1.5 million. (Doc. # 8-62). Ms. Ferry requested permission to sell 550 Corey free and clear of the Loan lien and instead asked that the lien attach to the sale proceeds. (Id. at 2). She stated that the proceeds would be held in trust until the Bankruptcy Court approved its distribution. (Id.). In the motion, she stated that the sale was "fair and equitable." (Id.). While noting that she disagreed with the amount, Ms. Ferry indicated that Bayview "alleged it held a claim of no less than $1,177,838.42" secured by 550 Corey. (Id.). She did not explain why she disagreed with the amount.

On February 3, 2020, the Bankruptcy Court granted Ms. Ferry's motion to sell 550 Corey. (Doc. # 8-66). The sale order did not declare or limit the amount owed by Ms. Ferry under the Loan. (Id.). It provided that the lien would attach to the sale proceeds, which would be held in trust pending a later determination of entitlement. (Id.).

On February 12, 2020, Ms. Ferry requested an updated estoppel letter from Bayview (Doc. # 8-86 at 3), but she did not receive an updated estoppel letter in response to her

request. (Id.). Bayview did provide Ms. Ferry with a loan history summary dated February 13, 2020, for the period of August 15, 2007, through February 10, 2020. (Id. at 2).

On February 28, 2020, Bayview purportedly assigned the Loan to E-Z Cashing. (Doc. # 8-100 at 2). On the same day, Ms. Ferry sold 550 Corey, generating sale proceeds of $1,404,833.20. (Doc. # 8-68 at 2). Ms. Ferry's title agent performed a search prior to closing and did not find an assignment of the Loan to E-Z Cashing. (Doc. # 8-96 at 2).

On March 2, 2020, E-Z Cashing sent Ms. Ferry's counsel a letter indicating that E-Z Cashing had assumed the Loan and disputed the accuracy of the Estoppel Letter. (Id. at 3). Ms. Ferry sent another request for an updated estoppel letter on March 10, 2020. (Id.). E-Z Cashing sent an updated letter on April 20, 2020, claiming that it was owed $1,400,287.83 as of May 1, 2020. (Doc. # 8-101 at 12-13). E-Z Cashing calculated the amount owed by assuming the Loan was effectively accelerated on October 1, 2014, and that a default interest rate of 18 percent applied since that date. (Id.).

### 3. **Motions for Summary Judgment and Attorney's Fees**

On March 6, 2020, Ms. Ferry filed an emergency motion to disburse proceeds from the sale of 550 Corey. (Doc. # 8-68).

She indicated that 550 Corey was sold on February 28, 2020, generating sale proceeds of $1,404,833.20 being held in trust by her counsel. (Id. at 2). She sought leave to disburse $980,331.32 to E-Z Cashing to satisfy the Loan and to disburse the remaining $424,501.88 to herself. (Id.). She argued that equitable estoppel prevented E-Z Cashing from collecting more than the amount Bayview stated in the Estoppel Letter, plus per diem interest for every day after October 31, 2019. (Id. at 3).

On April 1, 2020, Ms. Ferry filed a motion for summary judgment relating to the disbursement of sale proceeds from 550 Corey. (Doc. #8-84). She argued that E-Z Cashing was entitled only to $980,331.32 due to her detrimental reliance on the Estoppel Letter. To support her position, she cited Fla. Stat. § 701.04(1), which requires a mortgagee to provide a mortgagor with an estoppel letter setting forth the unpaid balance of the loan upon request. (Id. at 5-6).

E-Z Cashing filed a response and cross-motion for summary judgment. (Doc. # 8-98). It argued that it was entitled to all sale proceeds from 550 Corey to satisfy the outstanding loan balance of $1,400,287.33 because Ms. Ferry could not sustain her burden of proving each element of

equitable estoppel by clear and convincing evidence. (<u>Id.</u> at 10-14).

The Bankruptcy Court granted Ms. Ferry's motion for summary judgment and denied E-Z Cashing's cross-motion for summary judgment. (Doc. # 8-2). The Bankruptcy Court found that E-Z Cashing was estopped from claiming a balance more than the amount stated in the Estoppel Letter. (<u>Id.</u> at 10-11). It determined that § 701.04(1)(a) gave Ms. Ferry a right to seek a ruling limiting the payoff amount to the amount listed in the Estoppel Letter. (<u>Id.</u> at 11). In the alternative, the Bankruptcy Court found that Ms. Ferry proved the elements of the affirmative defense of equitable estoppel. (<u>Id.</u> at 12-14).

The Bankruptcy Court also denied without explanation Ms. Ferry's Motion for attorney's fees and costs. (<u>Id.</u>).

**B.   <u>600 Corey Loan</u>**

Ms. Ferry also owned real property located at 600 Corey Avenue and 618 73rd Avenue, St. Pete Beach, Florida (collectively "600 Corey"). (Doc. # 8-114). Bayview filed a second separate proof of claim as the holder of a loan secured by 600 Corey. (<u>Id.</u>). Bayview's proof of claim reflected that the balance of the loan (the "600 Corey Loan") was $1,116,326.50, of which $343,118.72 was accrued default

10

interest. (Id. at 3). The proof of claim stated that "[i]nterest continues to accrue at the default rate of interest, post petition." (Id.).

The litigation surrounding 600 Corey followed a script similar to that of 550 Corey. The Stay Relief Order also included a restructuring of the 600 Corey Loan. (Doc. # 8-27 at 2). Ms. Ferry requested an estoppel letter prior to the sale of 600 Corey. (Doc. # 8-52). The estoppel letter, which contained the same disclaimers as the 500 Corey Estoppel Letter, provided by Bayview did not include default interest in its payoff calculation. (Id.). E-Z Cashing assumed the 600 Corey Loan from Bayview on October 29, 2019, and disavowed the estoppel letter the same day. (Doc. # 8-104 at 1). E-Z Cashing did not provide an updated estoppel letter prior to the close of the sale of 600 Corey on November 22, 2019. (Id.).

The Bankruptcy Court ultimately resolved the dispute over 600 Corey in favor of E-Z Cashing. In the 600 Corey case, the Bankruptcy Court rejected Ms. Ferry's equitable estoppel argument, after determining that her reliance on the estoppel letter was not reasonable and that she failed to establish she relied on the estoppel letter to her detriment. In re Ferry, 631 B.R. 790, 803-4 (Bankr. M.D. Fla. 2021).

11

C.   **Appeal**

E-Z Cashing timely appealed the Bankruptcy Court's order on summary judgment as to 550 Corey to this Court. (Doc. # 8-1). Ms. Ferry cross-appealed the Bankruptcy Court's order denying her motion for attorney's fees and costs. (Doc. # 8-3). The appeal is fully briefed (Doc. ## 47, 52, 58, 60), and is now ripe for review.

II.  **Legal Authority**

A.   **Standard of Review**

Upon entry of a final order by the Bankruptcy Court, a party may appeal to the United States District Court pursuant to 28 U.S.C. § 158(a). The District Court functions as an appellate court in reviewing decisions of the Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994).

"Like a district court, a bankruptcy court may only grant summary judgment where there is no genuine issue of material fact." In re Optical Techs., Inc., 246 F.3d 1332, 1334 (11th Cir. 2001). Thus, this Court reviews all aspects of a bankruptcy court's grant of summary judgment de novo. Id. at 1335 (explaining that because a summary judgment decision by definition involves no findings of fact, "our law is, and has been, that a summary judgment ruling is reviewed de novo").

12

The District Court reviews a bankruptcy order pertaining to attorney's fees for abuse of discretion. <u>Matter of U.S. Golf Corp.</u>, 639 F.2d 1197 (5th Cir. 1981). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination or bases an award upon findings of fact that are clearly erroneous." <u>In re Prince</u>, 40 F.3d 356, 359 (11th Cir. 1994) (internal quotations and citations omitted).

### B. **Summary Judgment**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy cases by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation and quotation marks omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

14

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists

15

and that it is entitled to judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004); <u>see also</u> <u>United States v. Oakley</u>, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

## III. <u>Analysis</u>

### A. <u>E-Z Cashing's Appeal of Order on Cross Motions for Summary Judgment</u>

On appeal, E-Z Cashing raises multiple alleged errors on the part of the Bankruptcy Court that, it claims, merit reversal of its order on the parties' cross-motions for summary judgment. First, it contends that Ms. Ferry's claim to the disputed sale proceeds rests on a prior bankruptcy court decision that was reversed on appeal as inconsistent with Florida law. (Doc. # 47 at 19). Second, it argues that Ms. Ferry failed to meet her burden of proving by clear and convincing evidence the elements of equitable estoppel. (<u>Id.</u>).

Ms. Ferry responds that E-Z Cashing could not "demonstrate why it should be allowed to revisit a consummated

16

transaction between Bayview and [Ms. Ferry]." (Doc. # 52 at 16). She also notes that a proposed amendment to Section 701.04(1), Fla. Stat., would have strengthened protections for mortgagors. (Id. at 23-24).

At issue in this appeal is whether E-Z Cashing is estopped from collecting default interest on the Loan. Ms. Ferry acknowledges that E-Z Cashing is entitled to at least $980,331.32 (Doc. # 8-68 at 2). She disputes, however, E-Z Cashing's right to the remaining proceeds from the sale of 550 Corey. (Id.). For the reasons explained below, the Court finds that there is a genuine dispute of material fact as to two elements of Ms. Ferry's equitable estoppel defense.

In determining that Ms. Ferry had a right under Section 701.04(1) to seek an order limiting E-Z Cashing's award to the amount in the Estoppel Letter, the Bankruptcy Court relied on In re Kraz, LLC, 570 B.R. 389 (Bankr. M.D. Fla. 2017). The bankruptcy court in that case ruled that the mortgagee could not recover post-maturity interest after its failure to provide an estoppel letter to the mortgagor prevented the mortgagor from tendering payment. Id. at 437. Here, the Bankruptcy Court reasoned that E-Z Cashing was similarly prevented from recovering default interest after providing the Estoppel Letter that did not include default interest and

17

failing to provide an accurate version before 550 Corey was sold. (Doc. # 8-2 at 11). However, E-Z Cashing correctly notes that In re Kraz has since been overturned. See Branch Banking & Trust Co. v. Kraz, LLC, 626 B.R. 432, 445 (M.D. Fla. 2020) (vacating the bankruptcy court's final judgment).

The Kraz district court determined that the bankruptcy court's decision on the mortgagee's entitlement to default interest was contrary to Florida law. Id. The district court noted that "Florida recognizes a lender's right to charge default interest if the underlying loan document so provides, despite a failure to satisfy a statutory or contractual obligation." Id. at 438 (citing Eckert Realty Corp. v. Eckert, 941 So. 2d 426 (Fla. 4th DCA 2006); Smiley v. Manufactured Hous. Assoc. III Ltd. P'ship, 679 So. 2d 1229 (Fla. 2d DCA 1996)). "And in Florida, a lender's failure to provide an accurate estoppel letter does not excuse the promisor's contractual obligation to pay interest due under the note." Id. at 439 (citing Eckert at 429).

The Court is persuaded by the Kraz district court's opinion. Here, the Bankruptcy Court erred in determining that Section 701.04(1) created for Ms. Ferry a right to seek a ruling limiting E-Z Cashing's payoff amount to the amount listed in the Estoppel Letter. Ms. Ferry had a contractual

18

obligation to pay default interest independent of the mortgagee's requirement to provide an estoppel letter under Section 701.04(1).

In her brief, Ms. Ferry asks the Court to consider a proposed amendment to Section 701.04(1) that would have strengthened the protections for debtors who request estoppel letters. (Doc. # 52-1). The Florida Legislature, however, did not pass the amendment. Fla. S. Comm. on Insurance and Banking, CS/SB 1016 (draft of March 2, 2022). Therefore, this amendment does not support an independent right to rely on the Estoppel Letter.

Because she cannot lean on Section 701.04(1), Ms. Ferry must rely on the affirmative defense of equitable estoppel to show that she is entitled to summary judgment. "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." State v. Harris, 881 So. 2d 1079, 1084 (Fla. 2004) (citing State Dep't of Revenue v. Anderson, 403 So. 2d 397, 400 (Fla. 1981)). "Moreover, the party asserting equitable estoppel must prove that he or she reasonably relied on the conduct of the other

party." Starbuck v. R.J. Reynolds Tobacco Co., 349 F. Supp.
3d 1223, 1228 (M.D. Fla. 2018). To prevail on a request for
equitable estoppel, a debtor "must demonstrate [each]
element, by clear and convincing evidence[.]" Spagnoli v.
Medtronic Minimed, Inc., No. 07-22871-CIV, 2009 WL 10669108,
at *6 (S.D. Fla. Mar. 10, 2009) (citing Major League Baseball
v. Morsani, 790 So.2d 1071, 1076 (Fla. 2001); Mobile Medical
Industries v. Quinn, 985 So.2d 33, 35 (Fla. 1st DCA 2008)).

The Bankruptcy Court determined that Ms. Ferry met this
standard of proof. (Doc. # 8-2 at 12). However, after
reviewing the record, the Court finds that there is a genuine
dispute of fact as to whether Ms. Ferry reasonably relied on
the Estoppel Letter or that her reliance on the Estoppel
Letter led her to detrimentally change her position.

E-Z Cashing does not deny that the Estoppel Letter was
a representation of a material fact contrary to a later-
asserted position. Though E-Z Cashing now claims it is owed
a higher amount, Bayview represented that the amount
necessary to satisfy the 550 Corey loan through October 31,
2019, was $965,242.52 and that interest would continue to
accrue at the rate of $125.49 per day from November 1, 2019.
(Doc. # 8-65).

There is, however, a genuine dispute regarding the reasonableness of Ms. Ferry's reliance on the Estoppel Letter. The Estoppel Letter calculated the amount owed through October 31, 2019, about four months prior to the sale of 550 Corey. A reasonable jury could find that Ms. Ferry, a real estate investor for several decades (Doc. # 8-8 at 7-11), knew or should have known that these letters were only valid for the period of time noted on each letter. The Estoppel Letter also included explicit warnings that the debtor needed to "call the number listed below to update figures prior to remitting funds, as figures are subject to change without notice." (Doc. # 8-65 at 3). It also stated that the "Note holder reserves the right to adjust these figures and refuse any funds which are insufficient to pay the loans in full or for any reason." (Id.). Additionally, the Stay Relief Order stated that the amount owed on the Loan was $1,177,838.42. (Doc. # 8-65 at 2). Ms. Ferry herself acknowledged on December 20, 2019, in her motion to sell 550 Corey that Bayview was seeking that amount to satisfy the Loan. (Doc. # 8-62 at 2). Finally, Ms. Ferry had, only months earlier, gone through the same estoppel letter dispute regarding 600 Corey. The issues surrounding 600 Corey could have put Ms. Ferry on notice that the estoppel letters

contained disclaimers and that her creditors could dispute the amount after the "good through" date.

Taken together, the warnings and the references to a higher amount owed in the Bankruptcy Court proceedings could demonstrate that Ms. Ferry's reliance on the Estoppel Letter was not reasonable. The Estoppel Letter, which expired several months before the sale, included disclaimers stating that the creditor could change the amount owed for any reason. Ms. Ferry also demonstrated through her motion to sell 550 Corey that she knew Bayview claimed the amount owed was higher than the amount in the Estoppel Letter.

In the alternative, Ms. Ferry has shown some evidence demonstrating that her reliance was reasonable. She requested an updated estoppel letter before closing the sale of 550 Corey. Ms. Ferry could have determined that Bayview's decision not to send an updated letter meant that she could continue to rely on the Estoppel Letter. She also states that, unlike the 600 Corey loan, she did not know prior to closing that E-Z Cashing had assumed the 550 Corey Loan (Doc. # 8-96 at 2); therefore, she did not know that another creditor might seek default interest.

There is also a genuine dispute as to whether Ms. Ferry detrimentally changed her position in reliance on the

Estoppel Letter. The Bankruptcy Court found that Ms. Ferry sold 550 Corey at a price "that paid off the Loan and preserved some equity." (Doc. # 8-3 at 13). Ms. Ferry contends that "[i]f Bayview had provided an estoppel letter asserting a much higher payoff amount, [she] would have likely sold the property for a much higher amount or not gone through with the sale to Adam Kestenbaum for $1,500,000." (Doc. # 8-107 at 8). The Court agrees that these facts demonstrate Ms. Ferry detrimentally changed her position. A debtor often seeks an estoppel letter before selling real property, and Ms. Ferry sought such a letter to ensure she sold her real property at a price that would definitively satisfy the Loan. See (Doc. # 8-3 at 13). A reasonable jury could determine Ms. Ferry detrimentally relied on the Estoppel Letter when she sold 550 Corey with the understanding that the sale would fully satisfy the creditor's claim. See A&E Adventures LLC v. Intercard, Inc., 529 F. Supp. 3d 1333, 1361 (S.D. Fla. 2021) (acknowledging that plaintiff's sale of her house based on the defendant's promise "might have shown detriment as a kind of lost opportunity cost"); Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc., 145 So. 3d 989, 992 (Fla. Dist. Ct. App. 2014) (assuming without deciding that plaintiff's sale in

reliance upon defendant's promise to extend the default date on its mortgage).

However, a reasonable jury could also determine that Ms. Ferry did not suffer a detriment due to her reliance on the Estoppel Letter. In her motion seeking permission to sell 550 Corey, she stated that the sale price of $1.5 million was fair and equitable. (Doc. # 8-62 at 2). She has introduced no evidence demonstrating that she sold 550 Corey for less than fair market value or at a reduced price to meet the terms of the Stay Relief Order. In fact, she sold 550 Corey several months after the deadline under the Stay Relief Order to repay the Loan.

As to Ms. Ferry's argument that E-Z Cashing cannot "revisit a consummated transaction between Bayview and the Debtor," the Court is not persuaded. (Doc. # 52 at 16). Ms. Ferry does not explain to what transaction she is referring and cites no legal authority to support her theory. Because Ms. Ferry makes no attempt to cite record evidence or case law in support of this supposed consummated transaction resolving the 550 Corey Loan between her and Bayview, the Court will disregard it.

Because there is a factual dispute regarding Ms. Ferry's affirmative defense of equitable estoppel, the Court reverses

the Bankruptcy Court's order granting Ms. Ferry's motion for summary judgment and affirms its order denying E-Z Cashing's motion for summary judgment.

### B.   Ferry's Appeal of Order Denying Attorney's Fees

In her cross-appeal, Ms. Ferry argues that she is entitled to attorney's fees and costs related to the adjudication of E-Z Cashing's motion for summary judgment. She argues that Fla. Stat. § 57.105(2) provides her the right to seek attorney's fees for successfully defending against E-Z Cashing's motion for summary judgment. (Doc. # 52 at 21-24). "If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract," then Section 57.105(2) allows a court to grant attorney's fees when the other "party prevails in any action, whether as plaintiff or defendant, with respect to the contract." Fla. Stat. § 57.105(2). The Loan provides that E-Z Cashing is entitled to attorney's fees with respect to litigation concerning the Loan. (Doc. # 8-100 at 4).

Because the Court has reversed the Bankruptcy Court's order granting summary judgment in favor of her, Ms. Ferry is no longer a prevailing party. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of HHR, 532 U.S. 598, 601 (2001) (explaining that a "judicial imprimatur," in the form of a

judgment on the merits or a consent decree or similar judicial relief, is necessary to establish prevailing party status). As such, Ms. Ferry is not entitled to attorney's fees under Section 57.105(2). In re O'Steen, No. 3:14-BK-4766-PMG, 2019 WL 6001891, at *3 (M.D. Fla. Nov. 14, 2019) (determining that, in the context of Section 57.105(2), "the prevailing party determination is a precondition to the court's exercise of discretion to award a fee to the other side."). Therefore, the Court dismisses as moot Ms. Ferry's cross-appeal of the Bankruptcy Court's order denying her motion for attorney's fees and costs.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED:**

(1)  The Bankruptcy Court's May 7, 2020, order granting Suzanne Ferry's Motion for Summary Judgment is **REVERSED.**

(2)  The Bankruptcy Court's May 7, 2020, order denying E-Z Cashing LLC's Motion for Summary Judgment is **AFFIRMED.**

(3)  Suzanne Ferry's cross-appeal of the Bankruptcy Court's May 7, 2020, order denying her Motion for Attorney's Fees and Costs is **DISMISSED** as moot.

(4)  The Clerk is directed to **REMAND** this matter to the Bankruptcy Court for further proceedings consistent with this opinion and thereafter **CLOSE** this case.

26

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

<u>21st</u> day of February, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE